**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                                )
MCWILLIAMS BALLARD, INC.,       )
        Plaintiff,              )
                                )
        v.                      ) Civil Action No. 09-0690 (EGS)
                                )
LEVEL 2 DEVELOPMENT,            )
 et al.,                        )
                                )
        Defendants.             )
_____)
```

<u>**MEMORANDUM OPINION**</u>

Plaintiff McWilliams Ballard, Inc. ("plaintiff" or "McWilliams Ballard") commenced this action alleging that the two limited liability company defendants and two individual defendants are alter egos of one another and failed to repay funds loaned to them to assist in the purchase and development of real property located in the District of Columbia. Defendants L2CP LLC ("L2CP"), Jeffrey D. Blum ("Blum"), and David Franco ("Franco") have moved to dismiss all claims against them and to vacate the Notice of Pendency of Action ("*lis pendens*") filed by plaintiff.[1] Upon consideration of the motion, the response and reply thereto, the applicable law, the entire record, and for the reasons following, the Court **DENIES** defendants' motion to dismiss and to remove the notice of *lis pendens*.

---

[1] The fourth defendant, Level 2 Development, LLC, ("Level 2") filed an answer to the complaint on May 21, 2009.

I.  **BACKGROUND**

Plaintiff, a corporation organized under the laws of Virginia, Compl. ¶ 1, alleges the following facts.  Defendant Level 2 is a limited liability company organized under the laws of the District of Columbia, with its principal place of business in the District of Columbia.  Compl. ¶ 2.  Defendant L2CP is a company organized under the laws of Delaware with its principal place of business in the District of Columbia, at the same address as Level 2.  Compl. ¶ 3.  Defendants Blum and Franco (the "individual defendants") are managers, members, directors, or officers of Level 2 and L2CP.  Compl. ¶¶ 4-5.

Plaintiff agreed to loan $100,000 to defendant Level 2 on March 11, 2005 for the acquisition, development, and/or improvement of real property located in the District of Columbia (the "Property").  Compl. ¶ 11.[2]  The Property was intended to be developed as a mixed-use, nine-story building containing approximately 170 residential condominiums, street-level retail, and underground parking, to be known as "View 14" ["View 14 Project"].  Compl. ¶ 13.  Defendant L2CP then purchased the Property on June 6, 2005, presumably with the proceeds of the loan made by plaintiff to Level 2, and development began soon after.  Compl. ¶ 13.  The loan became due on March 11, 2009;

---

[2] A copy of the promissory note signed by defendant Blum on behalf of Level 2 on March 11, 2005 is attached to the complaint.

however, Level 2 did not make the payment required of it on that date, nor has any payment been made since. Compl. ¶¶ 14-15. Plaintiff provided Level 2 with a written notice of default on March 11, 2009. Compl. ¶ 16; Notice of Default, Ex. C.

Plaintiff alleges that the defendants are collectively "alter egos and/or agents of one another and, at all relevant times, operated as a single business enterprise in the District of Columbia." Compl. ¶ 6. Plaintiff further alleges that the individual defendants formed L2CP "to create a layer of a limited liability company between them and Level 2 and between Level 2 and the [View 14] Project" and "exercised full control over Level 2 and [L2CP] for their own benefit and purposes . . . completely dominated and controlled the assets, operations, activities, policies, programs, procedures, strategies and tactics of Level 2 and [L2CP], [and] failed to observe important corporate formalities." Compl. ¶¶ 19, 24.

The complaint contains five counts alleging claims against all defendants: breach of contract, unjust enrichment, breach of the implied duty of good faith and fair dealing, fraudulent inducement, and conversion. The complaint also alleges two additional counts against the individual defendants: conspiracy to commit fraud and aiding and abetting fraud. Finally, the complaint seeks to impose a constructive trust against the Property owned by L2CP. The individual defendants and L2CP filed

a motion to dismiss all claims against them under Federal Rule of

Civil Procedure 12(b)(6) and to vacate the *lis pendens* plaintiff

filed encumbering the Property.

## II. STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must satisfy

Federal Rule of Civil Procedure 8(a)(2)[3] or, when pleading fraud,

Rule 9(b).[4]  To survive a motion to dismiss a complaint for

failure to state a claim upon which relief can be granted

pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff

must make sufficiently detailed factual allegations in the

complaint.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007).  The allegations must "raise a right to relief above the

speculative level."  *Id.* (citation omitted).  "In evaluating a

Rule 12(b)(6) motion, the Court must accept as true all of the

factual allegations contained in the complaint and grant the

plaintiff the benefit of all inferences that can be derived from

the facts alleged."  *Eleson v. United States*, 518 F. Supp. 2d

279, 282 (D.D.C. 2007) (internal citations and quotation marks

omitted).  "However, 'a plaintiff's obligation to provide the

---

[3] Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

[4] Rule 9(b) requires a party "alleging fraud . . . [to] state with particularity the circumstances constituting fraud or mistake," but allows "[m]alice, intent, knowledge and other conditions of a person's mind to be alleged generally."  Fed. R. Civ. P. 9(b).

grounds of his entitlement to relief [in his complaint] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation" when considering a motion to dismiss. *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## III. DISCUSSION

### A.   Breach of Contract

Count I of the complaint alleges breach of contract against all defendants. The moving defendants argue that they were not parties to the alleged contract between Level 2 and McWilliams Ballard and that the promissory note does not impose obligations on them. Plaintiff responds that the moving defendants are liable because they are the "alter egos" of, and therefore indistinguishable from, Level 2, and that all defendants operated as a single business enterprise. Pl.'s Mem. of P. & A. in Opp'n to Defs.' Mot. to Dismiss, and to Remove Notice of Pendency of Action ("Pl.'s Mem."); Compl. ¶ 6. The "alter ego" theory may be invoked by parties seeking to pierce the corporate veil and impose liability upon the corporation's shareholders. *Estate*

*ofv. Mitchell,* 947 A.2d 464, 470 (D.C. 2008).[5]

The District of Columbia Court of Appeals has enunciated the following test for piercing the corporate veil: "[g]enerally, the corporate entity will be respected, but a party may be permitted to pierce the corporate veil upon proof, 'that there is (1) unity of ownership and interest, and (2) use of the corporate form to perpetrate fraud or wrong,' or 'other considerations of justice and equity' justify it." *Id.* (citing *Bingham v. Goldberg, Marchesano, Kohlman, Inc.,* 637 A.2d 81, 92 (D.C. 1994)).[6] Factors for determining when to pierce the corporate veil include, *inter alia,* "(1) whether corporate formalities have been disregarded, (2) whether corporate funds and assets have been extensively intermingled with personal assets, (3) inadequate initial capitalization, and (4) fraudulent use of the corporation to protect personal business from the claims of creditors." *Id.* at 470-71 (citation omitted).

---

[5] Resolution of claims arising under state law, whether brought in federal court or not, is controlled by the substantive law of the state that creates the cause of action. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). The principle of *Erie* applies to federal courts in the District of Columbia. *United States v. Pena*, 731 F.2d 8, 11 (D.C. Cir. 1984). Therefore, District of Columbia law applies when analyzing plaintiff's state law claims.

[6] Defendants erroneously claim that District of Columbia law requires a finding of fraud in order to justify piercing the corporate veil. Defs.' Mot. to Dismiss and to Remove Notice of Pendency of Action ("Defs.' Mot.") at 4. In fact, the District of Columbia Court of Appeals has held that fraud *or* "other considerations of justice and equity" may justify piercing the corporate veil; therefore, fraud is not required. *Estate of Raleigh,* 947 A.2d at 470 (citing *Bingham,* 637 A.2d at 92).

Construing plaintiff's allegations as true, as the Court must at this stage, plaintiff has sufficiently alleged facts allowing a plausible inference that there is unity of ownership and interest between Level 2, L2CP, and the individual defendants. In particular, plaintiff alleges that "[t]he acquisition of the Property and development of the [View 14] Project were the personal investments and business ventures" of the individual defendants and that the individual defendants formed L2CP to "create a layer of a limited liability company" between them and defendant Level 2 and between defendant Level 2 and the View 14 Project without establishing any separate business structure, following business formalities, or maintaining separate business records. Compl. ¶¶ 18, 19. Plaintiff also alleges that neither Level 2 nor L2CP was a separate business with its own separate decision-making process and personnel allowing them to deviate from the wishes of the individual defendants. Compl. ¶ 21. At this stage, these claims are sufficient to plead the unity of ownership and interest element of this cause of action. *See Estate of Raleigh,* 947 A.2d at 470. (D.C. 2008).

Second, the complaint sufficiently demonstrates that considerations of equity and justice justify maintaining the claim against the moving defendants at this stage. For instance, plaintiff alleges that the defendants represented that the loan

was "absolutely necessary" to effectuate the purchase, development, and improvement of the View 14 Property.  Compl. ¶ 65.  Thus, as plaintiff argues, the project could not have moved forward without the loan and should Level 2 be found liable for the money allegedly owed plaintiff, considerations of justice and equity may require piercing the corporate veil in order to ensure that the loan is repaid.  *See* Pl.'s Mem. at 10.  Therefore, plaintiff has alleged sufficient facts in support of its breach of contract claim to survive a motion to dismiss at this stage.

### B.  Unjust Enrichment

Count II of the complaint alleges that defendants were unjustly enriched by using the funds provided by plaintiff to develop the Property and then refusing to repay the loan.  Unjust enrichment occurs when 1) the plaintiff conferred a benefit on the defendant; 2) the defendant retained the benefit; and 3) under the circumstances, the defendant's retention of the benefit is unjust.  *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005) (citing *4934, Inc. v. District of Columbia Dep't of Employment Servs.*, 605 A.2d 50, 55 (D.C. 1992)).  Plaintiff has pled facts sufficient to satisfy each of these elements.  In addition to the general facts cited above, plaintiff alleges that it conferred a benefit on defendants when it made the loan to Level 2.  Compl. ¶¶ 11-12, 31.[7]  Plaintiff also alleges that

_____

[7] Plaintiff alleges that the funds were diverted to L2CP and the individual defendants; therefore, for all practical purposes,

defendants retained the benefit because the loan has not been repaid. Compl. ¶¶ 15, 31. Finally, plaintiff alleges that allowing defendants to retain the benefits of the loan, the View 14 Project, without repayment would be "unjust, unfair, and inequitable." Compl. ¶ 32. While defendants argue that no specific allegations are provided, Defs.' Mot. at 8, "[s]pecific facts are not necessary" at the pleading stage. *Aktieselskabet AF 21 Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 16 (D.C. Cir. 2008)(citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

### C. Breach of the Implied Duty of Good Faith and Fair Dealing

In the District of Columbia, all contracts contain "an implied duty of good faith and fair dealing, which means that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000) (quoting *Hais v. Smith*, 547 A.2d 986, 987 (D.C. 1988)). A party breaches this implied duty of good faith and fair dealing when it "evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party." *Id.*

---

the benefit was conferred on the moving defendants as well as Level 2, to which the loan was directly made. *See* Compl. ¶¶ 24, 31, 40, 64.

Defendants hinge their argument that plaintiffs have not sufficiently alleged such a breach on their argument that there was not a contract between plaintiff and the moving defendants. As discussed above, plaintiff has adequately pled facts to support a claim for breach of contract against the moving defendants. Therefore, plaintiff has likewise adequately pled that the moving defendants evaded the spirit of the contract and willfully rendered imperfect performance.

**D.    Fraud Claims**[8]

Counts IV, V, and VI contain various fraud-based allegations against the defendants. Under District of Columbia law, there are five elements to the tort of common law fraud: "(1) a false

---

[8] Under District of Columbia law, the individual defendants are liable for torts in which they participate. "[C]orporate officers 'are personally liable for torts which they commit, participate in, or inspire, even though the acts are performed in the name of the corporation.'" *Perry ex rel. Perry v. Frederick Inv. Corp.,* 509 F. Supp. 2d 11, 18 (D.D.C. 2007)(quoting *Lawlor v. District of Columbia*, 758 A.2d 964, 974 (D.C. 2000)). "Liability must be premised upon a corporate officer's meaningful participation in the wrongful acts ... [which] can exist when there is an *act or omission* by the officer which logically leads to the inference that he had a share in the wrongful acts of the corporation which constitute the offense." *Id.* (quoting *Lawlor,* 758 A.2d at 977)(emphasis in original). Here, plaintiff has alleged that the individual defendants are directors or officers of Level 2 and L2CP and that they participated in the fraudulent conduct by misrepresenting their intentions. Compl. ¶¶ 4-5, 38. As the Court noted in a similar case, it "is not an uncommon result" that the same allegations that support veil-piercing also support the inference that the individual defendants were meaningful participants in the alleged fraud. *McWilliams Ballard, Inc. v. Broadway Mgmt. Co., Inc.*, 636 F. Supp. 2d 1, 10 (D.D.C. 2009).

representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action . . . taken in reliance upon the representation." *Bamba v. Res. Bank,* 568 F. Supp. 2d 32, 34 (D.D.C. 2008) (quoting *Bennett v. Kiggins,* 377 A.2d 57, 59-60 (D.C. 1977)).  To satisfy the particularity requirement of Rule 9(b), "the pleader [must] state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud[,] . . . and identify individuals allegedly involved in the fraud." *United States ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.,* 389 F.3d 1251, 1256 (D.C. Cir. 2004) (citing *Kowal v. MCI Commc'ns, Corp.,* 16 F.3d 1271, 1278 (D.C. Cir. 1994)); *Quality Air Servs., L.L.C. v. Milwaukee Valve Co., Inc.*, 567 F. Supp. 2d 96, 103 (D.D.C. 2008). Rule 9(b) must, however, be read in conjunction with Rule 8(a), which requires only a short and plain statement of the claims. *See U.S. ex rel. Williams*, 389 F.3d at 1256.  Motions to dismiss for failure to plead fraud with particularity are evaluated in light of the overall purpose of Rule 9(b) to "ensure that defendants have adequate notice of the charges against them to prepare a defense." *United States ex rel McCreedy v. Columbia/HCA Healthcare Corp.*, 251 F. Supp. 2d 114, 116 (D.D.C. 2003).

In this case, plaintiff alleges that the defendants made false representations which led plaintiffs to sign the promissory note. Plaintiff clearly points to negotiations that took place between itself and the individual defendants on behalf of Level 2 and L2CP concerning the loan that was "absolutely necessary" in order for defendants to move forward with the View 14 Project. Compl. ¶ 65. These negotiations ultimately led to plaintiff signing a promissory note for the $100,000 loan on March 11, 2005. Compl. ¶ 11. Plaintiff alleges that, at the time this loan was made, defendants had no intention of repaying the loan. Compl. ¶¶ 38, 46, 53. These allegations contain sufficiently particular details regarding the content of the misrepresentations, who made the false statements, and when they were made to provide defendants the opportunity to prepare a defense, and thus meet the pleading requirements of Rule 9(b). As discussed in more detail below, the Court therefore finds that defendants' attempts to dismiss plaintiffs fraud-based claims must fail at this time.

### 1. Fraudulent Inducement

Count IV of the complaint alleges that defendants fraudulently induced plaintiff to loan them money that they never intended to repay. Fraudulent inducement requires proof of: 1) a false misrepresentation; 2) made in reference to a material fact; 3) with knowledge of its falsity; 4) with the intent to deceive;

and 5) action taken in reliance upon the misrepresentation.  *In re McKenny*, 953 A.2d 336, 342 (D.C. 2008).  The parties' arguments on this claim center on whether plaintiff has adequately alleged that an actionable misrepresentation was made.

Defendants argue that the alleged "misrepresentation" that the loan would be repaid does not qualify as a fraudulent misrepresentation because if it did, "anyone who borrows money and fails to repay it would be liable for punitive damages and attorney's fees under a theory of fraud."  Defs.' Mot. at 9. Contrary to defendants' position, the breach of a contractual promise *can* be the subject of a fraudulent misrepresentation "if at the time of its making, the promisor had no present intention of carrying it out."  *Virginia Acad. of Clinical Psychologists v. Group Hospitalization & Med. Servs.*, 878 A.2d 1226, 1234 (D.C. 2005).  This is precisely what plaintiff alleges here: that defendants induced it into making the loan and that "they never intended to repay the loan."  Compl. ¶ 38.  Thus, plaintiff's allegations satisfy the first element of the fraudulent inducement claim.

The alleged misrepresentation was material because McWilliams Ballard would not have made the loan but for the promise to repay; therefore the second element is met.  Compl. ¶ 40.  Plaintiff's allegations that defendants made the promise to repay the loan in order to induce plaintiff to sign the

promissory note, and that they knew at the time that they had no

intention repaying the loan, satisfy the third and fourth

elements of this claim. Compl. ¶ 38. Finally, plaintiff's

action of actually making the loan satisfies the final element of

a fraudulent inducement claim.[9]

---

[9] Defendants argue that L2CP did not "exist" at the time the
promissory note was signed and, therefore, that it could not
possibly have made such a misrepresentation. Defs.' Mot. at 10.
In support of this argument, defendants attached L2CP's Delaware
Certificate of Incorporation to their motion, indicating that the
company was formed on May 4, 2005. Plaintiff responds that
defendant L2CP did in fact exist at the time the promissory note
was signed, despite the date of incorporation. Pl.'s Mem. at 16
n.8. Plaintiff's assertions must be taken as true at this time.
The Court notes, however, that in the District of Columbia,
corporate existence begins "upon the issuance of the certificate
of incorporation." *Owen v. Bd. of Dirs. of Washington City
Orphan Asylum*, 888 A.2d 255, 267 (D.C. 2005) (quoting D.C. Code §
29-301.32); *see also Robertson v. Levy*, 197 A.2d 443, 446 (D.C.
1964) ("The corporation comes into existence only when the
certificate has been issued. Before the certificate issues,
there is no corporation de jure, de facto, or by estoppel."));
*Rest. Equip. Serv. v. Cohen*, No. 90A-JN-3, 1991 WL 113386, at *2
(Del. Super. Ct. April 3, 1991) (citing Del. Code. Ann. Tit. 8, §
106 (1998) ("[C]orporate existence could not commence until the
certificates of corporation were filed with the Secretary of
State.").

While defendants attach the certificate of incorporation to their
motion, the Court will exclude it from consideration because the
case is at the motion to dismiss stage and plaintiff disputes the
date on which L2CP came into existence. "[W]hen 'matters outside
the pleadings are presented to and not excluded by the court' on
a motion to dismiss under Rule 12(b)(6), 'the motion must be
treated as one for summary judgment [.]'" *Highland Renovation
Corp. v. Hanover Ins. Group,* 620 F. Supp. 2d 79, 82 (D.D.C. 2009)
(quoting Fed. R. Civ. P. 12(d)). Neither party has argued that
the Court should convert the motion to dismiss to a motion for
summary judgment under Rule 12(d), and the Court declines to
convert the motion *sua sponte*.

### 2. Conspiracy to Commit Fraud

Count V of the complaint alleges that the two individual defendants, Blum and Franco, engaged in a conspiracy to commit fraud. The elements of conspiracy to commit fraud are: 1) an agreement between two or more persons; 2) to participate in an unlawful act; and 3) an injury caused by an unlawful overt act performed by one of the parties to the agreement, and in furtherance of the common scheme. *Hill v. Medlantic Care Group*, 933 A.2d 314, 334 (D.C. 2007). The complaint meets the first two elements because it alleges an agreement between the individual defendants to make false promises to repay the loan on behalf of Level 2 and L2CP. Compl. ¶¶ 19, 24, 44, 45. Furthermore, plaintiff has sufficiently alleged injury by claiming that it has not been paid money owed to it pursuant to the promissory note. Compl. ¶¶ 15, 17.[10]

### 3. Aiding and Abetting Fraud

Count VI alleges that the individual defendants aided and abetted fraud in their capacity as representatives of Level 2 and L2CP. The elements of aiding and abetting fraud are: 1) the party that the defendant aided performed a fraudulent act that

---

[10] The Court further notes that plaintiff's claims for conspiracy to commit fraud and aiding and abetting fraud, addressed *infra*, are "a means for establishing vicarious liability for [an] underlying tort" and plaintiff has stated a valid fraud claim that forms the basis for these derivative claims. *See Broadway Mgmt. Co., Inc.*, 636 F. Supp. 2d at 7 n.7. (quoting *Cadet v. Draper & Goldberg, PLLC*, No. 05-2105, 2007 WL 2893418, at *14 (D.D.C. Sept. 28, 2008)).

caused injury; 2) the defendants were aware of their role in contributing to the fraud when they acted; and 3) defendants knowingly assisted the wrongdoer in the fraud. *Silverman v. Weil*, 662 F. Supp. 1195, 1200 (D.D.C. 1987). Again, plaintiff's claims regarding the agreement entered into by the individual defendants on behalf of Level 2 and L2CP and their awareness at the time that they did not intend to follow through with their promise to repay the loan satisfy the elements of this claim.

### E. Conversion

Count VII of the complaint alleges conversion against all defendants. In the District of Columbia, "conversion has generally been defined as any unlawful exercise of ownership, dominion or control over the personal property of another in denial or repudiation of his rights thereto." *Flocco v. State Farm Mut. Auto Ins.*, 752 A.2d 147, 158 (D.C. 2000) (quotations omitted). Plaintiff alleges that defendants induced plaintiff to make a loan that they never intended to repay and that those funds have been controlled by defendants contrary to plaintiff's rights, despite demands by plaintiff to be repaid. *See* Compl. ¶¶ 15-17, 38. These allegations are sufficient to survive a motion to dismiss.

### F. Constructive Trust

In Count VIII of the complaint, McWilliams Ballard seeks to impose a constructive trust against L2CP as owner of the View 14

16

Property.  "A constructive trust arises where a person who holds

title to property is subject to an equitable duty to convey it to

another on the ground that he would be unjustly enriched if

permitted to retain it." *Heck v. Adamson*, 941 A.2d 1028, 1029

(D.C. 2008) (quotation omitted).[11]  McWilliams Ballard has

alleged that L2CP received the proceeds of the $100,000 loan and

that it used such funds for the acquisition and development of

the View 14 Property.  Compl. ¶¶ 11, 13.  Additionally, according

to plaintiff's allegations, L2CP would not own and could not be

developing the View 14 Property without the loan made by

plaintiff.  Compl. ¶ 65 (alleging that "[d]efendants represented

to McWilliams Ballard that the Loan was absolutely necessary for

the purpose of acquiring, developing and/or improving the

property.").  In *Heck* the District of Columbia Court of Appeals

acknowledged the trial court's decision to uphold a claim for

constructive trust where plaintiff sought to "follow the money"

---

[11] In their motion to dismiss, defendants misstate the
court's holding in *Heck* by arguing that a constructive trust will
not be granted absent a showing by the complaining party that a
recovery of legal damages would be inadequate.  Defs.' Mot. at 13
(citing *Heck*, 941 A.2d at 1031).  Rather, the *Heck* court only
noted that this argument was made and considered by the trial
court, but declined to take a position on whether this argument
was correct.  *Heck*, 941 A.2d at 1031.  Defendants also cited
*McAteer v. Lauterbach*, for this proposition; however, in that
case the court similarly noted without deciding the argument.
*See* 908 A.2d 1168, 1169 (D.C. 2006) (per curium).  In any event,
the Court is not making a determination at this stage of
litigation whether a constructive trust should be granted, rather
the Court is only making a determination whether plaintiff's
claim for a constructive trust survives a motion to dismiss.

and assert a constructive trust over property that was purchased with proceeds from the sale of a separate property, to which plaintiff alleged he was entitled. 941 A.2d at 1029 (holding that constructive trust was an interest in property sufficient to support the filing of a notice of *lis pendens*). Here, plaintiff is similarly attempting to "follow the money" and has adequately pled that allowing L2CP to continue its use and enjoyment of the property constitutes unjust enrichment.

In their reply, defendants argue that because L2CP did not exist at the time the promissory note was signed, it is improper to impose a constructive trust against it.[12] Because, however, plaintiff has adequately pled facts sufficient to support piercing the corporate veil, were the veil to be pierced, L2CP could be liable for the funds owed to plaintiff. Therefore, defendants' argument that the Court would have to conclude that a claim can be maintained against a limited liability company for actions taken before it came into existence is incorrect. *See* Defs.' Reply at 2. If plaintiff ultimately succeeds in piercing L2CP's corporate veil, L2CP could be liable to plaintiff and thus a constructive trust could be appropriate.

---

[12] As discussed in note 9, *supra*, the Court assumes at this stage of litigation that L2CP did exist at the time the note was signed.

18

## IV. Removal of Lis Pendens

In addition to the motion to dismiss filed on behalf of the individual defendants and L2CP, defendant L2CP also asks the Court to remove the *lis pendens* plaintiff filed against the View 14 Property.  In the District of Columbia, a *lis pendens* notice should be filed if an action in "state or federal court in the District of Columbia" either "affect[s] the title to" or otherwise "assert[s] a mortgage, lien, security interest, or other interest in real property situated in the District of Columbia."  D.C. CODE § 42-1207(a) (2010).  The District of Columbia Court of Appeals has stated that the "*raison d'etre* of the *lis pendens* statute is" is to avoid "the risk that property will be transferred before litigation affecting an interest in [the property] is concluded . . . ."  *McAteer,* 908 A.2d at 1170.  The validity of a *lis pendens* notice does not depend on the merits or likely outcome of the case.  *Id.* at 1170.  An action, such as this one, asserting a constructive trust is "*an* 'interest in real property' which is all the statute requires."  *Heck*, 941 A.2d at 1030 (emphasis in original).

Removal of a *lis pendens* is only available in narrow circumstances.  The statute provides for cancellation and release of the notice if "judgment is rendered in the action or proceeding against the party who filed the notice of pendency."

D.C. CODE § 42-1207(d) (2010).[13]  In *Heck*, the District of

Columbia Court of Appeals rejected a request to remove a *lis*

*pendens* in a case where, as here, plaintiffs had asserted a

constructive trust.  941 A.2d 1028.  The *Heck* court reasoned that

the statute "envisions that the notice will remain in effect

until judgment on the underlying action is rendered." *Id*. at

1030.  In refusing to cancel the *lis pendens*, the *Heck* court

reiterated that "'upon a motion to cancel or discharge a *lis*

*pendens*, the court may not consider anything other than whether

the complaint sufficiently states a cause of action to impress a

[constructive] trust." *Id*. at 1030-31 (quoting *Polk v. Schwartz*,

399 A.2d 1001, 1004 (1979)) (alteration in original).  The court

stated in dicta that it "might well be justified in concluding

that, before judgment is rendered in the action or proceeding,

the trial court enjoys no authority to order cancellation of a

*lis pendens* notice" and stated that "at a minimum, any

'equitable' power the court has to act before judgment must be

exercised parsimoniously." *Id*. at 1030.  Thus, if this Court

enjoys any authority to cancel a *lis pendens*, it could exercise

such authority only in rare circumstances not present in the

instant case.

---

[13] The District of Columbia Court of Appeals has noted that
the appropriate remedy for a frivolous *lis pendens* notice is the
imposition of sanctions.  *Heck*, 941 A.2d at 1030 (citing D.C.
CODE § 42-1207).

## V.   CONCLUSION

For the reasons set forth above, the Court **DENIES** defendants' motion to dismiss and to remove the notice of *lis pendens*.  An appropriate Order accompanies this Memorandum Opinion.

**Signed:**     **Emmet G. Sullivan**
          **United States District Judge**
          **March 24, 2010**